HINTON v. STANTON.

Opinion delivered December 20, 1915.

1. BUILDING CONTRACTS—CHANGE IN PLANS—QUESTION OF FACT.—
   Whether the construction of a *porte cochere*, not contemplated in a building contract, was a mere addition, not involving a change in the plans, held to be a question for the jury.

2. BUILDING CONTRACTS—CHANGE IN PLANS—TESTIMONY OF EXPERTS.—
   Testimony by architects as experts, as to whether the addition of a *porte cochere* to a house, when the same was not contemplated in the original plans, is inadmissible.

Appeal from Sebastian Circuit Court, Fort Smith District; *Paul Little,* Judge; affirmed.

*Read & McDonough, for appellants.*

1.   Under the law as declared by the Supreme Court, and under the facts in this second trial, the court should have directed a verdict for the plaintiff.   112 Ark. 207. This court said that the case should be submitted to a jury *on the one question as to the "porte cochere."*   "Ex-

tra work" refers to additional work, and not to work contemplated in the contract. Extra work may be agreed upon without any change or alteration in the contract itself. 125 (Oregon) Pac. 298; 142 N. Y. S. 479; 133 N. W. 422; 81 Am. St. 824; 177 Fed. 168.

2. There was error in giving and refusing instructions. 79 Ark. 185; 98 *Id.* 595.

3. Persons qualified to give opinions may testify to the value of land. 44 Ark. 103; 49 *Id.* 381; 52 *Id.* 180; 87 Ark. 443.

4. It is the province and duty of the jury to fix the attorneys' fee, yet expert attorneys may testify as to the value of the fee. 92 Ark. 569. See on "Expert Testimony," 64 So. 547; 163 S. W. 955; 129 Pac. 406; 147 S. W. 283; 13 N. W. 40; 132 *Id.* 6; 54 So. 60; 134 S. W. 107; 133 *Id.* 873; 95 *Id.* 310; 93 N. E. 177. For cases where opinion or expert testimony is admissible, see 68 S. E. 649; 123 N. W. 327; 123 S. W. 715; 120 N. W. 1044; 82 N. E. 401; 113 N. W. 752; 94 Fed. 329; 53 N. E. 810; 114 Mich. 233, and 53 other citations.

*G. C. Hardin* and *A. A. McDonald*, for appellee.

1. The decision on the former appeal leaves, really, but one main question in this case, 112 Ark. 213. "Did the construction of the *porte cochere* involve a *change* in the contract? If so, was it material? and did the surety consent to the change? These should have been submitted to the jury under proper instructions. The law is settled. 112 Ark. 213.

2. The rule as to the admissibility of expert testimony is well settled. 62 Ark. 74; 64 *Id.* 532; 55 *Id.* 593; 52 *Id.* 180; 23 *Id.* 215; 24 *Id.* 251; 41 *Id.* 111. The opinions of nonexperts are not admissible. 41 Ark. 111; 62 *Id.* 1; 85 *Id.* 488; 29 *Id.* 488; 66 *Id.* 416; 66 *Id.* 494; 95 *Id.* 155.

3. There is no error in the court's charge to the jury. See cases cited, *supra.*

SMITH, J. This is the second appeal in this case, the opinion in the former appeal being reported in 112 Ark.

207, and reference is made to that opinion for a statement of the issues in the case.

In reversing the former judgment in this case and in remanding the cause for a new trial we said:

"But it is not necessarily the case that the *porte cochere* did not involve a material change in the builder's contract. It was originally embraced in the plans, and was then stricken out, and after the contract had been let, was reinserted. Its cost is too great for the court to say as a matter of law that it was an immaterial change. It would be more nearly correct to say as a matter of law that it was a material change provided it was a change at all. But did it involve a change in the contract for the construction of the building or was it a mere addition to the building? We think that question should have been submitted to the jury. The contractor's bond to build a house would not be rendered void because he agreed to build something else, or some addition to the house, unless the addition involved some material change in the contract for the construction of the house. The *porte cochere* was not a part of the plan covered by the bond, and no liability could have arisen against the surety out of its construction. However, if its construction involved some change in the building contract, which a jury should find to be of a material nature, such change would invalidate the bond, unless the consent of the surety was secured. But if the *porte cochere* could be, and was, attached to the building without involving any material change in the plan of the building, then the fact that it was constructed would not render the bond invalid; and, under the circumstances of this case, the test of materiality of the change is this: Could the owner have made a separate contract for the *porte cochere* and could that contract have been performed without materially changing the contract which Norris had made, and upon which appellee was surety? If this could have been done, then the contract for the *porte cochere* is an additional contract and not a change in the original contract."

It will thus be seen that the issues were narrowed to two questions of fact, viz: whether the construction of

the *porte cochere* involved a material change in the plans of the building, and, if so, whether the surety had consented thereto.

The court, of its own motion, gave four instructions, which very clearly and accurately defined the issues in the case, and might very well have refused all requests for other instructions. However, a number of instructions were asked by respective counsel. Those which were given contained amplifications of issues which were already plain. Of the instructions refused it may be said that those which were correct and which might have been given were covered by other instructions which were given.

(1) It is first earnestly insisted that the undisputed proof shows that the construction of the *porte cochere* was a mere addition to the building and that it did not involve any change in its plans. We think, however, that the proof was sufficient to raise a question of fact on this issue, and the jury has found adversely to appellant's contention.

(2) It is also urged that the court erred in refusing to permit certain architects, who were shown to be learned and skilled in the profession, to testify that the *porte cochere* did not involve any material change in the plan of the building. The rule in such cases is well established; the difficulty arises in its application to the facts of particular cases. In the case of *Fordyce* v. *Lowman,* 62 Ark. 74, Mr. Justice BATTLE, speaking for the court, said:

"The opinions of experts are admitted as evidence for the sole purpose of aiding the court or jury to understand questions which inexperienced persons are not likely to decide correctly without such assistance. When the subject-matter of inquiry before a court requires special experience or knowledge to comprehend, they are admissible for that purpose, but are not when the inquiry is into a subject which a man of ordinary intelligence and experience in the affairs of life can understand, as in that case the assistance is not needed. *Brown* v. *State,* 55 Ark. 593; *Muldowney* v. *Illinois Cent. R. Co.,* 36 Ia. 472."

Applying this rule to the facts in this case, we think no error was committed by the court in refusing to permit the architects to express their opinions as experts. The subject-matter of the controversy was simple and could be explained to and understood by a jury of average intelligence, and, while it was manifestly a subject upon which there could be and was a difference of opinion, it was not a subject upon which only experts could form an intelligent opinion or reach an intelligent conclusion.

Finding no error, the judgment is affirmed.