Robert SIMS, Jr. *v.* SAFEWAY TRAILS, INC. and Midwest Bus Lines, Inc.

87-257                                      764 S.W.2d 427

Supreme Court of Arkansas
Opinion delivered February 13, 1989

*Walker, Roaf, Campbell, Ivory & Dunklin*, by: *Shelia F. Campbell*, for appellant.

*Cearly Law Firm*, by: *Robert M. Cearly, Jr.*, and *Jeffery S. Rubel*, for appellees.

STEELE HAYS, Justice. This personal injury case resulted in a verdict for the defendants, Safeway Trails, Inc. and Midwest Bus Lines, Inc. Appellant Robert Sims, Jr. (plaintiff below) maintains that the trial court erred in ruling that the testimony of his expert witness was inadmissible. Finding no error, we affirm the judgment.

At about 3:00 a.m. on September 9, 1984, Sims collided with

a bus owned and operated by the appellees. The bus had overturned on Interstate I-40 near Protho Junction, in Pulaski County, Arkansas. Headed east, the bus was in the inside lane when a vehicle merged onto the interstate from an access ramp entering from the left of eastbound traffic. To admit the merging vehicle, the bus moved to its right into the outside lane. The entering vehicle, rather than occupying the inside lane, continued onto the outside lane just ahead of the bus, which was rapidly overtaking the vehicle. Unable to use the shoulder because of an abandoned van, the bus attempted to reoccupy the inside lane, and in so doing lost control on the rain slick pavement, "fishtailed," swerved onto the median and eventually turned on its side, partially blocking the westbound portion of the interstate. Appellant, driving west, collided with the overturned bus and sustained the injuries complained of.

Before trial the appellees moved in limine to exclude the testimony of Dr. Henry Hicks, an expert retained by appellant to investigate the collision. Dr. Hicks's proposed testimony was examined at some length in chambers prior to trial. The court ruled some of the testimony inadmissible, and reserved judgment on the balance until the trial evolved. Dr. Hicks was permitted to listen to the proof and at a later point additional testimony by Dr. Hicks was proffered in chambers. After hearing the proffer and arguments pro and con by counsel, the trial judge concluded that the testimony was too speculative and that the factual issues were not beyond the general comprehension of the jury. Having examined the proffered testimony in detail, we believe the trial court was correct.

Dr. Hicks has been associated with the University of Arkansas for some twenty-five years and is currently professor of mechanical engineering. His qualifications to offer an expert opinion in appropriate areas are not challenged. Rather, the heart of the issue is whether the factual circumstances of the case require expert testimony and whether his opinions were conjectural.

Appellant does not take issue with the rule that the admissibility of expert testimony rests largely on the broad discretion of the trial court. *Dildine* v. *Clark Equipment Co.*, 282 Ark. 130, 666 S.W.2d 692 (1984); *Firestone* v. *Little*, 276 Ark.

511, 639 S.W.2d 726 (1982). Thus, on appeal the appellant has the burdensome task of demonstrating that the trial court has abused its discretion. *Arkansas Land and Cattle Co.* v. *Anderson-Tully Co.*, 248 Ark. 495, 452 S.W.2d 632 (1970).

Appellant maintains that Dr. Hicks should not have been denied the opportunity to testify, first, concerning the condition of the bus's brakes and, secondly, to express his opinion as to how the bus driver erred in responding to a critical situation.

Dr. Hicks proposed to testify that at his direction a former graduate student, Mr. Yorgas Papacostas, who had considerable experience as an automotive mechanic and who held a master's degree in mechanical engineering, went to Jackson, Mississippi, to examine the bus involved in this collision. The essence of his subsequent oral report to Dr. Hicks was that the brakes on the bus were faulty. Dr. Hicks, though never having seen the bus nor any of its parts, proposed to testify concerning the brakes as reported to him by Mr. Papacostas. The trial court correctly excluded the testimony.

Appellant cites us to A.R.E. Rule 703:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field and forming opinions or inferences upon the subject, the facts or data need not be admissible into evidence.

In ruling the testimony inadmissible the trial court referred to Dr. Hicks's proposed testimony as being merely a conduit for hearsay. Within the context of the case that decision was correct. Clearly, for Dr. Hicks to simply reiterate what his investigator told him concerning the brakes would be hearsay in its purest form. That, however, is not dispositive of the issue, because the law recognizes that an expert may rely on facts or data not admissible in evidence, if such facts are of a type reasonably relied upon by experts in a particular field in forming opinions upon the subject. A.R.E. Rule 703. Whether the data collected by Mr. Papacostas was of the type contemplated by Rule 703 is doubtful at best, but that need not concern us, because it is clear the data

was not relevant to any opinion expressed by Dr. Hicks in explaining how the mishap occurred.

■ Rule 703 is obviously not intended to give an expert witness license to merely repeat hearsay for the sake of bringing such information before the fact finder. Rather, it is to enable the expert to make certain assumptions for the purpose of arriving at an opinion within the witness's area of expertise. Dr. Hicks did not purport to have an opinion as to how the collision occurred which was even remotely related to the condition of the bus's brakes. Indeed his testimony concerning the brakes coincided with the proof of the appellee. Referring to the bus driver's testimony that he lightly applied his brakes on turning back to the inside lane, Dr. Hicks said, "Now we have a desperate situation and in my estimation, the driver did the right thing, he applied his brakes to some extent." (R. p. 285). In short, under these circumstances the condition of the brakes had no relevance probative of the cause of the collision and the trial court properly excluded it.

Turning to the remainder of Dr. Hicks's proffered testimony, we experience the same problem as the trial court in finding the kernel and condensing the substance of his opinion. Dr. Hicks either failed to develop, or failed to articulate, an opinion as to the cause of the collision which can be extracted from a number of loosely knit theories of how the driver might have reacted differently in the situation. He was of the opinion that if the bus driver had turned his wheels to the left rather than to the right just before turning over, the bus would have remained upright. However, his explanation of the dynamics which led him to that view cannot be comprehended and the trial court's conclusion that it was entirely too speculative must be upheld. One factual inaccuracy in Dr. Hicks's theory was his assumption that the bus driver's testimony was to the effect that the rear of the bus first veered to the right and then to the left but that the driver regained control of the bus before driving onto the median. The fact is the driver testified that when the rear swung back from the right it then swung left to the other extreme and he never regained control of the bus after it began to fishtail.

■ Suffice it to say, we have reviewed the in chambers proceedings carefully and find ourselves wholly in agreement

with the trial judge, who at one point observed, "I haven't heard anything that requires an expert to come in and testify." That observation, coming very near the end of the proffer, accommodates the rule that attempts to reconstruct traffic accidents are viewed with disfavor and in the absence of anything to indicate it was beyond the ability of the jury to understand the facts and draw their own conclusions, expert testimony is not admissible. *Caldwell* v. *State*, 267 Ark. 1053, 594 S.W.2d 24 (1980); *Woodward* v. *Blythe, Adm'x.*, 249 Ark. 793, 462 S.W.2d 205 (1971); *Huiton* v. *Stanton*, 121 Ark. 626, 183 S.W. 765 (1916).

■ There was no dearth of proof in this case as to potential causes of this collision. A passenger seated immediately behind the driver testified that the speed of the bus was 63 miles an hour and expressed her opinion that such speed was excessive for the prevailing conditions. We cannot say the trial court's discretion was abused by excluding Dr. Hicks's testimony.

AFFIRMED.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. In my opinion Dr. Henry Hicks should have been allowed to testify as an expert in this case. For twenty-five years he has been teaching at the University of Arkansas and is a professor in mechanical engineering. He has testified many times before and usually has to rely to some extent upon information furnished by others, as do most expert witnesses. Dr. Hicks had been to the scene of the accident, and by the use of an Arkansas State Highway Department map, he had physically walked off the distances as reflected on the police report. Moreover, he heard witnesses testify about the speed of the bus and the maneuvers which the bus made before it overturned.

In the present case he sent an engineering assistant, who held a master's degree in mechanical engineering, to Jackson, Mississippi, to inspect the brake system on the bus. The assistant had reported: "The brake shoe did not effectively contact the brake drum on that wheel . . . . Inspection of the aft rear wheel [left side] revealed the presence of copious amounts of lubricating oil on the brake drum." The assistant also conducted an operating test on the brakes of the bus. Dr. Hicks did not instruct his

assistant precisely on how to go about gathering the data he sought because the man was a dependable and reliable assistant and had performed such tasks many times before.

I agree with the majority opinion that an expert is needed when the jury is unable to understand the facts as presented. I cannot, however, agree that an expert is not a proper witness when there are eyewitnesses to the occurrence. Arkansas Rules of Evidence Rule 702 states:

> If scientific, technical or otherwise specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise.

Rule 402 provides:

> All relevant evidence is admissible, except as otherwise provided by statute or by these rules or by other rules applicable to the courts of this State.

Relevant evidence may be excluded pursuant to Rule 403:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

It is frequently necessary that expert opinion be based on sources other than actual physical experience. Einstein never "saw" relativity, nor did Sir Issac Newton see the apple falling on his head. Nevertheless, the theories of relativity and gravity are accepted today as basic "givens" in scientific discourse. An expert's testimony which is based on hearsay goes only to his credibility. Hearsay evidence may form the basis of an expert's opinion. *Dixon* v. *Ledbetter*, 262 Ark. 758, 561 S.W.2d 294 (1978).

Arkansas Rule of Evidence 703 states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If

of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible into evidence.

Obviously the facts about which Dr. Hicks wanted to testify were "perceived by or made known to him" prior to the trial. The weight of Dr. Hicks' testimony could have been tested by cross-examination. The fact that it was based partly upon hearsay is not sufficient grounds for excluding it. *Wallace* v. *Williams*, 263 Ark. 702, 567 S.W.2d 111 (1978).

We have in the past held, or at least indicated, that an expert could not testify unless the matter in question was beyond the comprehension of the jury. However, such a limitation is outdated and certainly is contrary to the spirit of the Arkansas Rules of Evidence. Although there is room for a difference of opinion on whether Dr. Hicks should have been allowed to testify on the question of the causation of the occurrence, it cannot be reasonably disputed that his testimony concerning the brakes should have been admitted. When Dr. Hicks was questioned about the brakes, the trial judge interrupted, saying: "Forget the brakes, can't go into that, can't even mention the fact that there were bad brakes."

In my opinion the ruling on this testimony was erroneous. I would reverse and remand for a new trial.