## WAL-MART STORES, INC. *v.* Carolyn BINNS

99–810                                            15 S.W.3d 320

Supreme Court of Arkansas
Opinion delivered April 27, 2000
[Petition for rehearing denied June 1, 2000.*]

---

* GLAZE and BROWN, JJ., would grant. CORBIN, IMBER, and SMITH, JJ., not participating. (Special justices appointed.)

*Joe Mazzanti,* Judge;

*Williams & Anderson, LLP,* by: *Leon Holmes* and *Steven W. Quattlebaum,* for appellant.

*Gibson & Hashem, P.L.C.,* by: *Hani W. Hashem; Sara Sawyer;* and *Ogles Law Firm,* by: *John Ogles,* for appellee.

W.H. "DUB" ARNOLD, Chief Justice. Appellant, Wal-Mart Stores, Inc., appeals from a circuit-court judgment, based upon a jury verdict, awarding appellee, Carolyn Binns, $750,000.00 in compensatory damages and $2,000,000.00 in punitive damages relating to Binns's abuse-of-process and malicious-prosecution claims against Wal-Mart. On appeal, Wal-Mart contends that the circuit court erred by failing to direct verdicts on both claims because Binns failed to prove (1) the essential elements of the tort of abuse of process, and (2) the elements of the tort of malicious prosecution, namely, lack of probable cause and malice. Additionally, Wal-Mart argues that Binns was erroneously awarded punitive damages based upon a lesser degree of *scienter* than was required for the underlying tort. Although the appeal was originally filed in the Court of Appeals, we granted appellant's request for supreme-court jurisdiction and accepted the case to consider a significant issue needing clarification or development of the law. Our jurisdiction is authorized pursuant to Ark. Sup. Ct. R. 1-2(b)(5) (1999). After considering the issues on appeal, we find merit in appellant's arguments. Accordingly, we hold that the circuit court erred by failing to direct verdicts on the abuse-of-process and malicious-prosecution claims, and we reverse the award of punitive damages.

## Background

Carolyn Binns was an employee in the Monticello, Arkansas, Wal-Mart lay-away department. David Craig and Tim Langley, two of Wal-Mart's managers, suspected Binns of theft through falsification of computer cash-register entries. In support of management's

belief that Binns had taken money from the registers, Wal-Mart points to the following facts: (1) on numerous occasions Binns canceled the final payment on a lay-away account shortly after a customer paid off the account and received the merchandise; (2) the register cash reports failed to show an "overage" when Binns performed this function; (3) Craig and Langley believed that the cash reports should have shown an overage in that situation; and (4) no other Wal-Mart employee performed the function Binns performed.

Following an internal investigation and questioning of Binns, Langley called the Monticello Police Department and reported the results of Wal-Mart's investigation. Detective Charles Cater continued the investigation at the Wal-Mart store and, according to Langley, reviewed the entire file compiled by management, including detail tapes, cash reports, Langley's notes, and payroll archives, that reflected the cancellation of final lay-away payments and the fact that the cash drawer was not "over" on the days on which these lay-away payments were canceled. Detective Cater copied some portion of the file and sought an arrest warrant for Binns. Following a probable-cause hearing, a warrant was issued for Binns's arrest. However, approximately one year later, the prosecuting attorney *nolle prossed* the charges against Binns, apparently based upon insufficient evidence. Subsequently, Binns filed an action against Wal-Mart for negligent prosecution, abuse of process, and malicious prosecution. Although the circuit court granted Wal-Mart summary judgment on the negligent-prosecution claim, a jury ultimately returned a verdict in Binns's favor on the remaining claims.

Appellee's principal witness at trial was Kevin Parker, a former Wal-Mart assistant manager at the Monticello store while David Craig was manager. Parker testified as an expert witness regarding procedures Wal-Mart employees should follow in a theft investigation. He also tendered his opinion as to what cash reports and computer records would reveal when a final lay-away account payment was made, canceled, and money remained in the cash drawer. Significantly, Parker acknowledged that management believed they had probable cause to bring charges against Carolyn Binns. Moreover, he testified that, based upon his review of the evidence and his personal knowledge of Craig, there was no ill will, spite, hatred, or spirit of revenge at work.

Wal–Mart timely moved for directed verdicts on both the abuse-of-process and malicious-prosecution counts. In response, Binns argued that based upon Kevin Parker's testimony, probable cause did not exist for her arrest and Craig and Langley were incompetent and negligent in referring her to authorities. She also suggested that Wal–Mart's motivation was that "[t]hey didn't know the computer system, . . . They didn't know how to run it." In fact, she described their conduct as a "mistake" because they did not ask her any questions about how the computer ran and mistakenly concluded that she took money. Notably, Binns also admitted that she had no indication that either Craig or Langley were motivated by revenge, ill-will, spite, or hatred.

Binns also averred that Wal–Mart used the criminal prosecution in an effort to extort money from her. However, her own recollection belies that claim. She testified that Langley told her, "No matter what you say we're going to prosecute; you're going to pay this money back." In light of this statement, Binns argues that the evidence was sufficient for the jury to infer malice, a required element for the tort of malicious prosecution. The circuit court agreed and denied appellant's directed-verdict motions. From the verdict and damages awarded in favor of appellee, comes the instant appeal.

## I. Abuse of process

Wal–Mart's first point on appeal challenges the circuit court's denial of its directed-verdict motion on Binns's abuse-of-process claim. In reviewing the trial court's denial of appellant's directed-verdict motion, we must view all reasonable inferences in the light most favorable to Binns and affirm the jury's verdict if there is substantial evidence to support it. Substantial evidence is that which is of sufficient force and character that it will compel a conclusion one way or another, forcing or inducing the mind to pass beyond suspicion or conjecture. *Garrett v. Brown*, 319 Ark. 662, 665, 893 S.W.2d 784, 786 (1995). Here, we conclude that the jury lacked sufficient evidence to support the verdict, and we reverse.

In order to prove the tort of abuse of process, a plaintiff must establish the following elements: (1) a legal procedure set in motion in proper form, even with probable cause, and even with

ultimate success, but (2) perverted to accomplish an ulterior purpose for which it was not designed, and (3) a willful act in the use of process not proper in the regular conduct of the proceeding. *Union Nat. Bank of Little Rock v. Kutait*, 312 Ark. 14, 16, 846 S.W.2d 652, 654 (1993). The key to an abuse-of-process claim is improper use of process *after* issuance, even when issuance has been properly obtained. *Id.* As distinguished from malicious prosecution, abuse of process "is somewhat in the nature of extortion or coercion." *Id.*

In the instant case, Binns failed to introduce sufficient evidence to support her abuse-of-process claim. First, she produced no evidence that Wal-Mart committed an abusive or coercive act *after* the arrest warrant was issued. Second, she introduced no evidence that the process was initiated to accomplish an ulterior purpose for which it was not designed. In fact, Binns's own testimony failed to support her theory that Wal-Mart threatened criminal prosecution in an effort to extort money from her. According to Binns's, Langley told her, "No matter what you say we're going to prosecute; you're going to pay this money back." The tenor of Langley's alleged statement is that Binns would not escape prosecution regardless of her promise to pay. Likewise, appellee's suggestion that Langley attempted to have her criminal charges reinstated after they were *nolle prossed* is not sufficiently borne out by the record. Langley testified only that he may have made one phone call to the prosecutor after he learned that the criminal charges were *nolle prossed*.

In sum, we cannot say that substantial evidence supported the jury's findings that Wal-Mart's actions were undertaken to accomplish an ulterior purpose for which the process was not designed. Nor can we find substantial evidence in the record that Wal-Mart acted wilfully in the use of process after issuance. Viewing all reasonable inferences in the light most favorable to appellee, we reverse the circuit court's denial of appellant's direct-verdict motion, and we reverse the jury's verdict.

## II. Malicious prosecution

Wal-Mart's second point on appeal assigns as error the circuit court's denial of its directed-verdict motion with respect to Binns's malicious-prosecution claim. Again, when we review the trial court's denial of appellant's directed-verdict motion, we must

view all reasonable inferences in the light most favorable to Binns and affirm the jury's verdict if there is substantial evidence to support it. *Garrett*, 319 Ark. at 665, 893 S.W.2d at 786. We have held that the essential elements of the tort of malicious prosecution are (1) lack of probable cause, and (2) malice. *Cordes v. Outdoor Living Center, Inc.*, 301 Ark. 26, 31, 781 S.W.2d 31, 33 (1989). Significantly, the two elements are not interchangeable, although malice may be inferred from lack of probable cause. *Id.* Probable cause for prosecution must be based upon the "existence of facts or credible information that would induce the person of ordinary caution to believe the accused person to be guilty of the crime for which he is charged." *Id.*

■ ■ Generally, ordinary caution is a standard of reasonableness and an issue for the jury. *Id.* However, when the facts relied upon to establish probable cause are undisputed, the question of whether probable cause exists is one for the courts. *Keebey v. Stifft*, 145 Ark. 8, 21, 224 S.W. 396, 400 (1920). If Wal-Mart, as the defendant in this malicious-prosecution case, "believed and had grounds for entertaining 'honest and strong suspicion' that [Binns] was guilty" of a crime, it was entitled to a directed verdict. *See id.* Here, Wal-Mart claims that its employees, Craig and Langley, believed and had grounds for an honest and strong suspicion that Binns was taking money from the cash registers because (1) she canceled customers' final lay-away payments shortly after they left the store with merchandise, and (2) cash reports revealed no corresponding cash overage. Notably, Binns introduced no evidence to contradict Wal-Mart's argument that Craig and Langley *believed* that the cash report should have shown an overage under these circumstances. In fact, she suggested that they made a "mistake." Viewed in the light most favorable to Binns, we cannot say that the jury had substantial evidence to find that Wal-Mart lacked probable cause.

To maintain a malicious-prosecution action, Binns must also prove the existence of malice. *See Kable v. Carey*, 135 Ark. 137, 142, 204 S.W. 748, 750 (1918). In support of the malice element, Binns relies upon the expert testimony of Kevin Parker, who reported that the Wal-Mart computer system would not have shown an overage when she canceled the last payment, even if she did not remove from the drawer the amount of the canceled payment. However, Parker also testified that, in his opinion, Craig and Langley believed that they had probable cause to conclude that Binns

was taking money from the register. Moreover, based upon his evidentiary review and personal knowledge, Parker admitted that he did not believe that Craig and Langley's actions in initiating the criminal proceedings arose from ill will, spite, or a spirit of revenge. Similarly, Binns's own testimony confirms her belief that Wal-Mart management acted out of incompetence.

■ In the absence of any evidence of malice, the malicious-prosecution claim dissolves. Moreover, we expressly reject Binns's argument that malice may be presumed from appellant's negligence. Viewing all reasonable inferences in the light most favorable to Binns, we hold that the jury lacked substantial evidence to satisfy the elements of malicious prosecution. Accordingly, we conclude that the trial court erred by failing to direct a verdict in Wal-Mart's favor, and we reverse the jury's verdict.

### III. Punitive damages

Wal-Mart's final point on appeal is that the circuit court erred by permitting punitive damages to be awarded based upon a lesser degree of *scienter* than was required for the underlying tort. The jury returned a general verdict for damages, awarding Binns $750,000.00 in compensatory damages and $2,000,000.00 in punitive damages, attributable to both the abuse-of-process and malicious-prosecution claims. Based upon AMI 2217, the circuit court instructed the jury that "in order to recover punitive damages from [Wal-Mart], Carolyn Binns has the burden of proving that the defendant *intentionally pursued* a course of conduct for the purpose of causing damage." (Emphasis added.) In selecting AMI 2217, the court declined Wal-Mart's proffered instruction requiring Binns to prove that Wal-Mart "intentionally and maliciously pursued a course of conduct for the purposes of causing damages to Carolyn Binns, carried out with the state of mind characterized by hatred, ill will, or a spirit of revenge."

■ Appellant notes that the use of AMI 2217 under the instant facts creates an inconsistent standard for awarding punitive damages when the underlying tort involves malice. We agree. For example, the underlying claim of malicious prosecution (which could have formed the sole basis for the challenged punitive-damages award), requires that the plaintiff prove intent and a spirit of ill

will, hatred, or revenge. However, the jury instruction submitted inconsistently permits an award based on a lesser degree of *scienter*, merely proof that the defendant *intentionally* pursued a course of conduct for the purpose of causing damage. In light of the nature of appellee's claim, we conclude that the circuit court erred by submitting AMI 2217 to the jury because the instruction is inadequate for a tort requiring proof of malice. We reverse the circuit court's judgment and award of punitive damages.

Special Associate Justices W.H. "SONNY" DILLAHUNTY and JONANN CONIGLIO FLEISCHAUER, join.

GLAZE and BROWN, JJ., dissent.

CORBIN, IMBER, and SMITH, JJ., not participating.

ROBERT L. BROWN, Justice, dissenting. The majority opinion finds no substantial evidence to support a jury verdict in favor of the appellee, Carolyn Binns. It is no wonder. The majority opinion examines only the evidence favorable to Wal-Mart in its analysis. This is exactly the opposite of what the law requires.

To decide whether a jury's verdict is supported by substantial evidence, we have adopted the following ground rules. It is not within this court's province to try issues of fact; rather it is our task to review the record for substantial evidence to support the jury's verdict. *City of Caddo Valley v. George*, 340 Ark. 203, 9 S.W.3d 481 (2000). In determining whether there is substantial evidence, we view the evidence and all reasonable inferences arising therefrom in the light most favorable to the party receiving the judgment. *D.B. Griffin Warehouse, Inc. v. Sanders*, 336 Ark. 469, 986 S.W.2d 836 (1999). If there is any substantial evidence to support the verdict, we affirm the trial court. *Grendell v. Kiehl*, 291 Ark. 228, 723 S.W.2d 830 (1987). We have further held that the weight and value of testimony is a matter within the exclusive province of the jury. *Routh Wrecker Serv. Inc. v. Washington*, 335 Ark. 232, 980 S.W.2d 240 (1998); *Union Pac. R.R. Co. v. Sharp*, 330 Ark. 174, 952 S.W.2d 658 (1997). Thus, what the majority should have done but fails to do in the instant case is view the evidence in the light most favorable to Binns and to give that evidence its strongest probative force.

Strangely, the majority does not even mention the evidence favorable to Binns, much less give it its strongest probative force. In disregarding our oft-stated standard of review, the majority discards decades of jurisprudence followed by appellate courts in Arkansas and virtually every other state in this country. The net result is that our jury system is undermined by what amounts to a weighing of evidence and a retrial of the case at the appellate level.

### a. Abuse of Process

The critical test for determining if the tort of abuse of process has been committed is whether there has been an improper use of process after its issuance to accomplish a purpose for which the process was not designed. *Routh Wrecker Serv., Inc. v. Washington, supra.*

The crux of Binns's case was the expert testimony of a former Wal-Mart manager, Kevin Parker. Parker's status as an expert is not contested by Wal-Mart in this appeal. He testified that Wal-Mart employees, Tim Langley and David Craig, only furnished the prosecutor with one piece of the evidentiary puzzle and that was the detail tapes from the cash registers. According to Parker, what they should have examined and turned over to the prosecutor were the daily cash reports to show whether the cash in the register drawer at the end of each day was long (too much) or short (too little). He further testified that store management is required to review the cash reports every day to ascertain whether the cash is short or long. If Binns had actually taken money, it would have shown up on the cash report, according to Parker. Finally, he made the point that once the lay-away account is closed after final payment, canceling the final payment of an inactive account has no effect on the money received. The only way to determine if money is missing is to examine the cash reports.

In sum, Parker concluded that had Craig and Langley looked at the cash reports, they would have known no money was missing from the cash registers. The warrant for Binns's arrest issued at Wal-Mart's request on April 12, 1994. She was charged with a felony and a misdemeanor on May 25, 1994. It was not until June 5, 1995, more than year later, that the prosecutor dropped the charges. The prosecutor stated that he was doing so because there was insufficient

proof based on Wal-Mart's own records. Surely more than a year was sufficient time for Wal-Mart to examine the cash reports to determine whether cash was actually missing. This, according to Parker, Wal-Mart failed to do. More importantly, this failure by Wal-Mart allowed the prosecution against Binns to continue for over a year without providing the prosecutor *with proof that cash was actually missing*. According to Parker, the detail tapes proved nothing.

This court has held that allowing a prosecution to continue without providing all of the facts can constitute abuse of process. *Routh Wrecker Serv., Inc. v. Washington*, 335 Ark. 232, 980 S.W.2d 240 (1998); *Harmon v. Carco Carriage Corp.*, 320 Ark. 322, 895 S.W.2d 938 (1995). That is exactly what occurred in this case.

I am, of course, aware of the fact that Langley and Craig testified that they had the cash reports and concluded that money had been stolen. But Parker, Binns's expert, contradicted this testimony and testified that Langley could not have seen the cash reports. This was a credibility issue for the jury to resolve, and not this court. *Union Pac. R.R. Co. v. Sharp, supra.* Our function is to decide whether Parker's testimony constitutes substantial evidence of abuse of process. And this court has made it perfectly clear in the past that the testimony of an expert witness in support of a claim equates to substantial evidence unless it is shown that the opinion is without reasonable basis. *Dixon Ticonderoga Co. v. Winburn Tile Mfg. Co.*, 324 Ark. 266, 920 S.W.2d 829 (1996); *Ford Motor Co. v. Massey*, 313 Ark. 345, 855 S.W.2d 897 (1993); *Wallace v. Williams*, 263 Ark. 702, 567 S.W.2d 111 (1978).

There is no doubt that substantial evidence supporting the jury verdict existed on this count.

### b. Malicious Prosecution

Wal-Mart mounts an offensive on the malicious-prosecution verdict on two bases: (1) Craig and Langley truly believed that Binns had stolen money, and (2) neither Binns nor Kevin Parker testified that the two Wal-Mart employees were malicious people. The first basis, of course, is self-serving, and the second is irrelevant since the determination of malice falls within the province of the jury. Furthermore, we have made it clear that malice can be

inferred from a conscious indifference to the resulting conse-quences. *See Wallace v. Broyles*, 331 Ark. 58, 961 S.W.2d 712 (1998). Again, the majority falls into the trap of recounting evidence sup-porting Wal-Mart's theory of the case rather than examining and analyzing the evidentiary basis for Binns's claim.

On the element of probable cause, Kevin Parker testified that had Langley and Craig looked at the cash reports, they would have known that probable cause was nonexistent. In addition, he recounted for the jury's benefit that Wal-Mart had violated its own internal policies by not confirming employee theft by eyewitness testimony, a confession, or tapes from a video camera. It merely relied on the detail tapes which Parker made clear do not confirm an actual shortage of cash.

Malice may be inferred from a lack of probable cause. *Corders v. Outdoor Living Center, Inc.*, 301 Ark. 26, 781 S.W.2d 31 (1989). There was, too, Langley's statement to Binns on March 28, 1994: "No matter what you say we're going to prosecute; you're going to pay this money back." Again, in complete disregard of our standard of review, the majority interprets this statement in a light favorable to Wal-Mart. The jury, however, could have readily interpreted Langley's comment as a threat to prosecute to get Binns to pay the money he suspected she had stolen. That, of course, would be evidence of malice. And if Wal-Mart failed to supply the critical cash reports to the prosecution in timely fashion, which Kevin Parker maintains were completely exculpatory, the jury could have accepted this as further evidence of malice. Finally, there was a telephone call by Langley to the prosecutor after the charges were dropped. Langley testified that he was not sure he tried to "meet" with the prosecutor to have the charges reestablished, but he did make a telephone call after the charges were dropped. Again, the jury could have taken that as an indication of malice.

In short, Wal-Mart pursued criminal charges against Binns for more than a year when, according to Kevin Parker, the cash reports exonerated her and when Wal-Mart had failed to follow its own procedures to establish employee theft. The prosecutor ultimately dropped charges due to insufficient evidence *based on Wal-Mart's records*. A combination of the above easily qualifies as substantial evidence of malicious prosecution.

### c. Punitive Damages

As a final point, the majority criticizes the trial judge for instructing on punitive damages for intentionally pursuing a course of conduct for the purpose of causing damage when that is precisely what our Model Jury Instruction provides and what we have confirmed in at least one decision. *See* AMI 2218, formerly AMI 2217; *see also Croom v. Younts*, 323 Ark. 95, 913 S.W.2d 283 (1996).[1] For the majority to blithely disregard AMI instructions and the *Crooms* case with no explanation is unfair to Binns in the extreme.

Of course, the majority need not reach the punitive damages point at all, because the majority would affirm no compensatory damages for Binns. Our cases are legion to the effect that there must be an award of compensatory damages to support an award of punitive damages. *See, e.g., Limited Stores, Inc. v. Wilson-Robinson*, 317 Ark. 80, 876 S.W.2d 248 (1994); *Bell v. McManus*, 294 Ark. 275, 742 S.W.2d 559 (1988).

I conclude that the majority does a disservice to the parties in the case and to our common law when it fails to follow our standard of review, to discuss apposite case authority, or to examine evidence supporting the jury's verdict and the resulting judgment. I would affirm the jury verdict.

GLAZE, J., joins.

---

[1] The 1999 codification of *AMI, Civil*, lists former AMI 2217 on punitive damages as AMI 2218.