BART F. VIRDEN, Judge |!Family Dollar Trucking, Inc.; Family Dollar, Inc.; and Family Dollar Services, Inc. (collectively, Family Dollar) bring this appeal from a judgment entered by the Crittenden County Circuit Court on a jury’s verdict awarding Jimmy Ward and Robert Huff a total of $3.25 million on their causes of action for malicious prosecution and outrage after they had been accused of theft and fired from their jobs with Family Dollar. Family Dollar argues that Huff and Ward failed to present sufficient evidence to support their causes of action and that the damages awards were excessive and not supported by the evidence. We hold that there was sufficient evidence to support the malicious-prosecution claims and that the damages awards were not excessive; however, we find the evidence insufficient 'to support the outrage claim. Accordingly, we affirm in part and reverse and dismiss in part. Huff and Ward were mechanics in Family Dollar’s West Memphis Distribution Center. |gThey were supervised by Dennis Stripling. In part, their duties were to conduct integrity inspections and to remove from service any trailers that were deemed not “road worthy” after the trailers failed the inspections. According to Huff, starting in 2005 and ending sometime in 2006, he and Ward were given permission by Stripling to purchase and re-sell the-trailers that had failed inspection. Stripling informed Family Dollar’s corporate fleet-maintenance manager, Bennie Stinson, who approved the sales. When Huff or Ward would sell a trailer, they would givé Stripling the amount he said was the price and they would keep the balance-. Stripling was supposed to forward the proceeds to Family Dollar. Family-Dollar denies that it ever authorized the sales. When Family Dollar learned of the sales, it began an investigation. Huff and Ward, among others, were terminated from their employment. Family Dollar’s investigative reports were given to the West Memphis Police Department, which then conducted its own investigation. At the request of the police, the investigator for Family Dollar signed the affidavits for arrest warrants for Huff, Ward, and Stripling. Charges were filed. Huff and Ward agreed to testify against Stripling. Stripling subsequently pled guilty to .a Class A misdemeanor and made restitution. The prosecutor then nolle prossed the charges against appellees. In April '2009, Huff and Ward filed suit against Family Dollar for malicious prosecution and outrage, contending’ Family Dollar prosecuted them when Family Dollar knew they were innocent, causing them to suffer méntal anguish, humiliation, and emotional distress. They sought both compensatory and ’ punitive damages. Family Dollar' answered and counterclaimed for conversion of the trailers. LThe case proceeded to a jury trial over four days in early February 2014. At the conclusion of Huff and Ward’s case and again at the close of all the evidence, Family Dollar moved for directed verdicts on both causes of action, which the court denied. The jury returned verdicts of $1.75 million for Huff and $1 million for Ward on their malicious-prosecution claims. The jury also awarded Huff and Ward $250,000 each on their outrage claims. It found for Family Dollar on the claims for punitive damages. The jury found for Huff and Ward on Family Dollar’s counterclaim for conversion of the trailers. Judgment was entered on the jury’s verdict. After the circuit court denied Family Dollar’s motions for new trial, judgment notwithstanding the verdict (JNOV), and remittitur, this appeal followed. The court also stayed the judgment pending this appeal. Our standard of review of the denial of a motion for directed verdict is whether the jury’s verdict" is supported by substantial evidence. Crawford Cnty. v. Jones, 365 Ark. 585, 232 S.W.3d 433 (2006). Similarly, in reviewing the denial of a motion for JNOV, we will reverse only if there is no substantial evidence to support the jury’s verdict, and the moving party is entitled to judgment as a matter of law. Id. ■ Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. Id. Tt is not our place to try issues of fact; rather, we simply review the record for substantial evidence to support the jury’s verdict. Id. In determining whether there is substantial evidence, we view the evidence and all reasonable inferences arising therefrom in the light most favorable to the party, on whose behalf judgment was entered. Id. A motion for directed verdict should be denied when there is a conflict in the evidence, or when the evidence is 14such that fair-minded people might reach different conclusions. See McMickle v. Griffin, 369 Ark. 318, 254 S.W.3d 729 (2007) (citing Wal-Mart Stores, Inc. v. Kelton, 305 Ark. 173, 806 S.W.2d 373 (1991)). The circuit court found, and we affirm that such was the case here. Family Dollar first challenges the jury’s verdicts on the malicious-prosecution claims. Our supreme court recently set forth the elements of a cause of -action for malicious prosecution as follow^: In order to establish a claim for malicious prosecution, a plaintiff must prove the following five elements: (1) a proceeding instituted or continued by the defendant against the plaintiff; (2) termination of the proceeding in favor of the plaintiff; (3) absence of probable cause for the proceeding; (4) malice on the part of the defendant; and (5) damages. Malice can be inferred from lack of probable cause. Malice has been defined as any improper or sinister motive for instituting the suit. Probable cause for prosecution must be based upon the existence of facts or credible information that would induce the person of ordinary caution to believe the accused person to be guilty of the crime for which he is charged. Ordinary caution is a standard of reasonableness, which present's an issue for the jury when the proof is in dispute br subject to different interpretations. McMullen v. McHughes Law Firm, 2015 Ark. 15, at 15-16, 454 S.W.3d 200, 210 (internal citations omitted). The thrust of Family Dollar’s argument is that probable cause conclusively existed because Tonya Alexander, sitting as a special judge, issued arrest warrants for Huff and Ward, and that it acted, on the advice of the deputy prosecuting attorney, Lindsey Fairley.[1] Acting upon the advice of counsel is a defense to a charge of malicious prosecution. Kellerman v. Zeno, 64 Ark. App. 79, 983 S.W.2d 136 (1998). However, to avail itself of the defense, Family Dollar must have made a full, fair, and truthful disclosure of all facts known to it and acted in good faith on counsel’s advice. Id. Family Dollar has the burden of proving this defense. Id. The jury in this case was instructed on the advice-of-eounsel defense. According to Huff and Ward, the jury might well have found that Family Dollar did not fully disclose to counsel all facts known to its investigator, in particular that Dan Gaza-way, Family Dollar’s investigator in this matter, believed that Huff and Ward were telling the truth when they told him that they had permission from Stripling and others to sell the trailers. We agree. Jimmy Huff testified that he had previously bought surplus Family Dollar property by going to his supervisor at the time, Richard Morgan. Regarding the trailers in question in this lawsuit, he said that he spoke with his supervisor, Dennis Stripling, about purchasing some of the trailers that did not,pass the integrity tests and that Stripling spoke with -Mike Preston, Family Dollar’s regional transportation manager in West Memphis, and Bennie Stinson, Family Dollar’s corporate fleet-maintenance manager, to get approval. According to Huff, Stripling later told Huff he could buy trailers for $400. Huff and Ward purchased and then sold other trailers over a one-year period, turning the $400 cost of each trailer over to Stripling. Huff assumed that Stripling was forwarding the money to Family Dollar. Bennie Stinson testified that, at the time, Family Dollar had no written policies or procedures in place for the disposition of property. Stinson stated that he advised Stripling about the process he used at Family - Dollar’s corporate office in North Carolina regarding | ^disposal of Family Dollar’s property, but left it up to Stripling ■ and. Preston to determine the process for disposing of-property at the West Memphis Distribution Center. One of the purchasers of multiple trailers, James Kitchens, testified that he personally talked with Stinson,, who advised him that the disposition of the trailers was up to Stripling. ■ Dan Gazaway testified that Preston told him that Stripling had authorization from Stinson to dispose of some trailers. He also said that Huff repeated his statement outlined above. Gazaway stated that Preston knew-trailers were either being- sold, or given away, which is why Preston was fired. Gazaway stated he never told the prosecutors or the police-that he believed Huff and Ward were being truthful or that they were acting pursuant to instructions from Stripling, Preston, or Stinson. . - Lieutenant Troy Galtelli of the West Memphis Police stated that it would have been significant in his investigation to know that a management official allowed the trailers to be sold. He also did not recall Gazaway’s telling him that Stripling set the prices for the trailers and that Huff and Ward paid that-price before reselling the trailers. Galtelli said that, under, those circumstances, .he did not think that it would be theft, and he-would not have filed the charges. ■ Tonya Alexander, the special judge who issued the warrants for Huffs and Ward’s arrests, testified that she was not sure if she had been told that Huff and Ward sold the trailers with the permission of their supervisor, and that "it would have been important to know this information. Alexander agreed that if Family Dollar had given permission for Huff and Ward to sell these trailers, then they could not have been charged with theft of property. She stated |7that she did not remember if she had read the Family Dollar reports prepared by Gazaway, nor could she even state that the documents had been submitted to her. Where testimony is in sharp conflict, it is the province 'of the jury, not the circuit court, to resolve such conflict. Kel-lermcrn, supra. In particular, when the evidence conflicts as to what a'defendant told his attorney in a malicious-prosecution action, a jury question is presented on the advice-of-counsel defense. Id. This was the view taken by the circuit court in denying Family Dollar’s motions for directed-verdict. Viewing the testimony in the light most favorable to Huff and Wardj there is substantial evidence that Family Dollar did not make a full, fair, and truthful disclosure to Fairley, the prosecuting attorney. A jury may reject the advice-of-counsel defense if there is substantial evidence that the defendants.either did not impartially state all,the facts to counsel or did not honestly and in good.faith act upon the advice given to them. Id. This same evidence would also support the jury in finding that Family Dollar lacked probable cause to file criminal charges against Huff and Ward. Huff and Ward were charged with theft of property. A person commits theft of property if he or she knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest .in, the property of another person with the purpose of depriving the owner of the property. Ark. Code Ann. § 5-36-103(a)(1) (Repl. 2013). If the testimony from Huff and Ward that they had permission from Dennis Stripling to sell the trailers was believed, then they would not be guilty of making unauthorized transfers of Family Dollar property. Gazaway testified that he never told prosecutors that Huff and Ward were acting pursuant to Stripling’s instruction lsor that Stripling’s superior, Mike Preston — Family Dollar’s regional transportation manager — signed asset-disposal forms indicating that some of the trailers had been disposed of. Malice, the fourth element of a cause of action for malicious prosecution, can be inferred from the lack' of probable case. Wal-Mart Stores, Inc. v. Williams, 71 Ark. App. 211, 29 S.W.3d 754 (2000). We hold that there was evidence upon which the jury could have found malice. Gazaway testified that he had been instructed by Charlie Gibson, the senior vice president of the supply chain, to prosecute Huff and Ward. There was also testimony from Raina Avalon, Family Dollar’s vice president of transportation, that although Huff and Ward stated that they had permission' from Dennis Stripling to sell the trailers, that information was not confirmed. This evidence, along with the allowable inference of malice, presented a question of fact, properly left for the jury. Gazaway testified that his superiors wanted Huff and Ward prosecuted. This is also the sort of “automatic” decision to prosecute that wás condemned in Wal-Mart Stores, Inc. v. Yarbrough, 284 Ark. 345, 349, 681 S.W.2d 359, 362 (1984). See also Burkett v. Burkett, 95 Ark. App. 314, 236 S.W.3d 563 (2006). We hold that the evidence was sufficient to support the claims for malicious prosecution and the circuit court properly allowed the matter to go to the jury. This brings us to Family Dollar’s argument that the evidence was insufficient as a matter of law to establish the cause of action for outrage. We agree. Arkansas courts have consistently taken a narrow view in recognizing claims for the tort of outrage. City of Green Forest v. Morse, 316 Ark. 640, 542, 873 S.W.2d 155, 156 (1994). Indeed, the Arkansas Supreme Court has taken great care to point out that this tort does not make actionable every- |9“insult or indignity one-must-endure in life,” Dillard Dep’t Stores, Inc. v. Adams, 315 Ark. 303, 305, 867 S.W.2d 442, 443 (1993) (quoting Sterling Drug, Inc. v. Oxford, 294 Ark. 239, 244, 743 S.W.2d 380 (1988)), but instead provides a basis for recovery only for “conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as. atrocious, and utterly intolerable in a civilized society.” M.B.M. Co. v. Counce, 268 Ark. 269, 280, 596 S.W.2d 681, 687 (1980): Arkansas caselaw makes clear that “[t]he tort of outrage is not easily established; merely describing conduct as outrageous does not make it so. Clear-cut proof is necessary to establish the four elements” of this tort. Cordes v. Outdoor Living Ctr., Inc., 301 Ark. 26, 34, 781 S.W.2d 31, 35 (1989). In Cordes, the supreme court specifically held that allegations that .the ■ defendants caused-the plaintiffs to be arrested, even if proven, did not rise to a level sufficient to support a claim for damages for the tort of outrage. See also Adams, supra; Miller v. Kroger Co., 82 Ark. App, 281, 105 S.W.3d 789 (2003). The supreme court’s statement in Adams is appropriate in this case: We do. not mean to áay that Dillards’ employees’ actions were merely a “slight insult.” We recognize Ms. Adams may well have suffered mental distress as a result of them. She was accused of a crime of which she was not convicted. We .cafinot, however, find in the facts alleged or shown the kind of “extreme degree” of outrageous conduct “as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society.” Whatever the merits of the claim of Dillards and Ms. Hallmark as to Ms. Adams’s conduct (and we assurhe no merit in them for purposes of this appeal) nothing that was done constituted conduct fitting our definition of “outrage.” Adams, 315 Ark. at 306, 867 S.W.2d at 443-44. Applying this standard for the tort of outrage, we cannot say that Huff and Ward’s evidence is sufficient to sustain their claims for outrage. | ¶ ¡Accordingly, we reverse and dismiss the claims for outrage. Finally, Family Dollar argues that the damages awarded for malicious prosecution are excessive, unsupported by the evidence, and. appear to have been given under the influence of passion or prejudice.[2] Our standard of review for an award of compensatory damages on appeal is as follows: When an award of damages is alleged on appeal to be excessive, we review the proof and all reasonable inferences most favorable to the appellee and determine whether the verdict is so great as to shock our conscience or demonstrate passion or prejudice on the part, of the jury. Allstate Ins. Co. v. Dodson, 2011 Ark. 19, at 14, 376 S.W.3d 414, 425 (citing Bank of Eureka Springs v. Evans, 353 Ark. 438, 455, 109 S.W.3d 672, 682 (2003)). The burden to be met under this standard of review in such a case is whether there, is substantial evidence to support the verdict. Id. The jury was instructed, without objection by Family Dollar, that if it found for Huff and Ward on the question of liability for malicious prosecution, -then it. should award damages for their mental anguish and reasonable expenses incurred in the defense of th.e prior criminal proceeding. A plaintiff may recover general damages in the form of compensation for the mental strain, emotional distress, embarrassment, humiliation, harm, to reputation, and perhaps fear of imprisonment arising from the prosecution. Evans, supra. Humiliation and embarrassment are part of the mental-anguish element of damages. Yam’s Inc. v. Moore, 319 Ark. 111, 890 S.W.2d 246 (1994). The amount of damages growing out of mental anguish lnis ordinarily left to the determination of the jury. Harold McLaughlin Truck Brokers v. Cox, 324 Ark. 361, 922 S.W.2d 327 (1996); Pursley v. Price, 283 Ark. 33, 670 S.W.2d 448 (1984). What was the evidence of damages? First, the only out-of-pocket expense was the $2,500 Huff and Ward each paid to attorney Chet Dunlap for representation in the criminal case. Second, both Huff and Ward' were arrested and spent a short time in jail. They testified that they suffered from artxiety and sleepless nights. They further testified that they suffered damage to their reputations after being labeled as ’thieves. There was testimony that Huff became distant from his family, and his blood pressure rose. He also was embarrassed because he had involved his long-time friends. Huff also had to borrow money from friends and family to meet his living expenses after being unable to draw from his 401 (k) account. According to Huff, these events caused him to drink heavily for a period. While Ward found other employment, Huff testified that he has not been able to do so because of the accusation by Family Dollar. He was making approximately $45,000 per year at the time he was feed. In light of the concurring and dissenting opinions authored by the minority in this case, it bears repeating that we, as an appellate court, do not weigh the evidence and supplant the- role of the jury, E.g., Stewart Title Guar. Co. v. Am. Abstract & Title Co., 363 Ark. 530, 215 S.W.3d 596 (2005). Whether each of us, had we been seated as a juror, would have found the facts as this jury did is not the question. Rather, we are to determine if the circuit judge was correct in his determination that there was substantial evidence to allow the jury to make the decision. 'Id. ' Family Dollar further contends that the jury’s damages award was made under the |¶ ¿influence of passion or prejudice. -We require more than the bald assertion that a verdict is the result of passion and prejudice'to reverse. Davis v. Davis, 313 Ark. 549, 557, 856 S.W.2d 284, 288 (1993). Our colleagues in the concurring and dissenting opinions suggest that these gentlemen “hit the lottery.” Such a statement is dismissive of the jury and the circuit judge who heard the testimony and observed the witnesses in this case. The cases are legion wherein we claim to give near total deference to the fact-finder’s determination of the weight of' the' evidence and the credibility of the witnessés. We are at a loss as to why those same principles should not apply in this case. The court’s conscience is never shocked when a jury returns a verdict for $0.00 in a case of liability. E.g., Wallis v. Keller, 2015 Ark. App. 343, 464 S.W.3d 128 (citing Fritz v. Baptist Mem’l Health Care Corp,, 92 Ark. App. 181, 211 S.W.3d 593 (2005)), In reviewing the proof most favorably to Huff and Ward, as we are required to do, we cannot say that the verdict demonstrates passion or prejudice on the part of the jury or shocks the conscience of- this court, id. ■ Affirmed in part; reversed and dismissed in part. • Kinard, Gruber, Vaught, and Hoofman, JJ., agree. Gladwin, C.J., and Harrison, Whiteaker, and Hixson, JJ., concur in part and dissent in part. . Family Dollar also relies on testimony given by another deputy prosecuting attorney, Fred Thorne. However, Thorne was not involved in making the decision on" probable cause to arrest Huff and Ward. Instead, Thorne was the prosecutor assigned to try the case in circuit court and who eventually made the decision to nolle pros the charges. . Because of bur reversal of the outrage claim, we need not address Family Dollar’s arguments concerning the damages on that claim.